# In the United States Court of Federal Claims

No. 11-335 T
(Filed: November 30, 2012)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | \* |
| **WYODAK RESOURCES** | \* |
| **DEVELOPMENT CORP.,** | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| **THE UNITED STATES,** | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Andrew A. Irvine*, Holland & Hart LLP, Jackson, Wyoming; *Walter F. Eggers, III*, Holland & Hart LLP, Cheyenne, Wyoming, for Plaintiff.

*A. Bondurant Eley*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant; of counsel, *Daniel W. Kilduff*, *Emily D. Morris*, Office of the Solicitor, United States Department of the Interior.

---

## OPINION

---

**DAMICH**, Judge:

The question before the court is whether the United States Office of Surface Mining Reclamation and Enforcement ("OSM") improperly assessed reclamation fees on coal, alleged to be lignite coal, produced at the Wyodak Mine near Gillette, Wyoming, at the higher rates applicable to ranks of coal other than lignite coal. The fees were assessed pursuant to the Surface Mining Control and Reclamation Act ("SMCRA" or "the Act"), 30 U.S.C. §§ 1201-1328.

Although the parties disagree with each other's characterization of the facts in this dispute, they concur that there are no genuine issues of material fact as to liability and have filed cross motions for summary judgment.

For the reasons stated herein, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

I.      Background

Plaintiff, Wyodak, owns and operates the Wyodak mine in the Powder River Basin near the community of Gillette in Campbell County, Wyoming.  Pursuant to SMCRA and its regulations, OSM assesses a reclamation fee per ton of coal "produced." 30 U.S.C. § 1232(a). The amount of the fee depends on the type or "rank" of the coal produced.  30 U.S.C. § 1232(a); 30 C.F.R. § 870.13(a)(1) and (a)(3).  Lignite coal, as distinct from anthracite, bituminous, and subbituminous coal, is subject to a lower rate.  *Id.*

Congress enacted SMCRA in 1977 to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a).  The Act provided for the creation of a trust fund, the Abandoned Mine Reclamation Fund, to promote the "reclamation and restoration of land and water resources adversely affected by past coal mining." 30 U.S.C. § 1231(a), (c).  Congress determined that the "burden of paying for reclamation is rightfully assessed against the coal industry." H.R. Rep. No. 95-218, 95th Cong. 1 st. Sess., *reprinted in* 1977 U.S.C.C.A.N. 668.  Reclamation fees are thus assessed and paid to the Secretary of the Interior for deposit into the Fund.  30 U.S.C. § 1231.

The Act provides, in relevant part:

> All operators of coal mining operations subject to the provisions of this Act shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 31.5 cents per ton of coal produced by surface coal mining and 13.5 cents per ton of coal by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 9 cents per ton, whichever is less.

30 U.S.C. § 1232(a).  Prior to October 1, 2007, and pertinent to the time periods at issue here, the statutory per-ton fees were 35 cents and 15 cents for coal produced by surface mining and underground mining, respectively, and 10 cents for lignite coal produce by either surface or underground mining.

In 2006, Wyodak reported to OSM that, for the period of January 1, 2006, through June 30, 2006, it had produced 282,988.42 tons of coal subject to reclamation fees at the lignite rate. OSM's Division of Compliance Management subsequently conducted an audit of Wyodak for the period of October 1, 2003, through June 30, 2006 ("Audit Report I").  The OSM report, issued January 27, 2007, noted that, per 30 C.F.R. § 870.5, lignite coal is defined as coal "having less than 8,300 British thermal units ["Btus"] per pound, moist and mineral-matter-free."  The report further explained, per § 870.12, that the reclamation fee is determined, however, by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the

operator.  Wyodak, according to the audit, failed to provide documentation to prove that the coal was lignite:

> Wyodak's assertion the coal was lignite was based on a study
> which determined lignite coal is present in Wyodak's current
> production area.  However, during the audit period Wyodak
> comingled the coal prior to the first sale and did not provide
> adequate documentation that the first sale was of lignite coal.

Audit Report 1 at 3.

The audit report concluded, "During the audit period, Wyodak reported 282,988.42 tons of coal at the lignite rate which should have been reported at the surface rate resulting in underreported reclamation fees of $70,747.11."  Accordingly, OSM required Wyodak to pay the balance of the reclamation fee owed at the surface rate, along with interest and a penalty.

Wyodak also submitted to OSM an amended reporting form for the period January 1, 1980, through December 31, 2005, claiming that it had paid the surface rate reclamation fee on 8,656,793.72 tons of coal that it determined subsequently was lignite coal and subject to the lower lignite rate.  It therefore requested a refund of its alleged overpayment.  The OSM Division of Compliance Management undertook a second audit and report ("Audit Report II").  It concluded, similarly to its first report, that Wyodak had failed to document that its "blended coal sold" did not exceed the lignite Btu definitional limits.  Because Wyodak could not show that the coal in question was lignite, it did not warrant an overpayment refund as requested.

Wyodak unsuccessfully sought administrative review of the conclusions of Audit Report I and II.

<u>Prior Legal Proceedings</u>

In 2007, Wyodak sought relief in the United States District Court for the District of Wyoming.  The parties filed cross motions for summary judgment.  In an unpublished decision dated September 30, 2009, the court granted summary judgment for the Government.  *Wyodak Resources Development Corp. v. United States*, Case No. 2:07-CV-00301-WFD, ECF No. 36 (D. Wyo., Sept. 30, 2007).  The district court described the "heart of this dispute" as "a disagreement about the point in time at which it is appropriate to classify the rank of coal for purposes of assessing reclamation fees."

The court first dispatched two arguments that the Government had raised as to lack of jurisdiction.  Wyodak had asserted jurisdiction in the district court pursuant to 28 U.S.C. § 1346(a)(1), which provides for the jurisdiction of United States district courts, along with the United States Court of Federal Claims, of actions for the recovery of "any internal-revenue tax" alleged to have been erroneously or illegally assessed or collected.  The Government argued that the reclamation fee under SMCRA was in the nature of an administrative fee rather than a tax on revenue.  As such, there was no jurisdiction pursuant to § 1346.  The district court held, however,

that case law supported the conclusion that the reclamation fee, despite the appellation "fee" in its description, was a tax within the meaning of 28 U.S.C. § 1346, and jurisdiction was proper in that court. *Wyodak*, ECF No. 36 at 8 (D. Wyo. 2007).

The district court also rejected the Government's second argument that jurisdiction was lacking because Wyodak's claim was actually a challenge to the promulgation of a regulation. The regulation provides:

> The operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use, including the products of in situ mining.

> The fee shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator.

30 C.F.R. § 870.12.

As a regulatory challenge, Wyodak's claim could then only be subject to judicial review in the United States District Court for the District of Columbia. 30 U.S.C. § 1276(a)(1). The court construed Wyodak's argument, however, not as an attack on the regulation itself. Rather it was a claim that the pertinent SMCRA regulation required the determination "in situ," of the standard rank of the coal in question, that is, prior to the calculation of the weight and value at the time of first sale.

The court found that "nothing in the language of 30 C.F.R. § 870.12 itself which prohibits the interpretation urged by Wyodak." *Wyodak*, ECF No. 36 at 10 (D. Wyo. 2007). It held, "If Wyodak is merely challenging the OSM's interpretation of the relevant regulation, that is not the type of 'attack' on the underlying regulation that will divest this court of subject matter jurisdiction." *Id*.

On the merits, however, the district court found for the Government. The SMCRA statute and regulations are clear that the reclamation fee is assessed only on coal that is actually "produced." 30 U.S.C. § 1232(a); 30 C.F.R. § 870.12(a). Thus the question was whether Wyodak's coal as "produced" was lignite. The court noted that the mining process resulted in a "natural homogenization" of the coal at the Wyodak mine. *Wyodak*, ECF No. 36 at 11 (D. Wyo. 2007). "If, however, the lignite coal that exists in the ground prior to mining is, by virtue of the mining process, co-mingled with non-lignite coal such that when sold it no longer is low-BTU/low grade coal," *id*., it would not qualify for the lignite rate reclamation fee, despite the policy reasons behind Congress's imposition of a lesser reclamation fee on lignite coal.

Wyodak argued that such an outcome would render nugatory the statutorily lower rate on lignite coal. The court was unpersuaded because, in places in the country other than the Wyodak mine, it was not "impossible for coal to survive the mining process and to be categorized as lignite coal after extraction and prior to sale." *Wyodak*, ECF No. 36 at 12 n.5 (D. Wyo. 2007).

Wyodak further argued that the regulations effectively required a determination of the standard rank of the coal, which could only be obtained in situ prior to the coal production. In

support, Wyodak cited 30 C.F.R. § 870.5, which defines lignite coal, and in particular the regulation's reference to standard "D 388-77" of the American Society for Testing and Materials ("ASTM").  The regulation reads, in pertinent part:

> Lignite coal means consolidated lignite coal having less than 8,300 British thermal units per pound, moist and mineral-matter-free. Moist, mineral-matter-free British thermal units per pound are determined by Parr's formula, equation 3, on page 222 of "Standard Specification for Classification of Coals by Rank," in American Society for Testing and Materials ASTM D 388-77 (Philadelphia, 1977).

30 C.F.R. § 870.5.

The court found, contrary to Wyodak's argument, "nothing in the plain language of 30 C.F.R. § 870.5 that requires a coal producer to obtain a 'standard rank' of the coal in ground pursuant to ASTM D 388." *Wyodak*, ECF No. 36 at 13 (D. Wyo. 2007).  The regulation's reference was merely to the pertinent page of the ASTM standard that recited Parr's formula. The district court's grant of summary judgment in favor of the Government, therefore, was founded on its determination that the classification of the rank of coal for purposes of assessing the appropriate reclamation fee is made at the time of first sale (or transfer of ownership or use by the operator).

The district court action was rendered moot, however, on appeal to the United States Court of Appeals for the 10th Circuit.  Wyodak challenged the district court's merits argument; the Government renewed its challenge to the district court's jurisdiction.  The 10th Circuit held, in short, that the reference in §1346(a)(1) to "internal revenue tax," for purposes of suit in United States district courts, meant monies collected by the Internal Revenue Service (or its precursor, the Bureau of Internal Revenue), rather than merely any tax revenue collected within the United States.  *Wyodak Resources Development Corp. v. United States*, 637 F.3d 1127, 1134 (10th Cir. 2011).  The court explained, after analyzing the legislative and common law history of tax refund suit jurisdiction in U.S. district courts, "Suits for recovery of other fees and taxes, even if they can be characterized as 'internal revenue,' do not fall within the statute's ambit." *Id*.  Because reclamation fees are collected by OSM, rather than by the IRS, the district court lacked jurisdiction.  Wyodak, the appellate court ruled, "must bring this claim in the Court of Federal Claims."[1]  *Id*. at 1136.

II.     Standard of Review

Summary judgment is a "salutary method" of procedure under the Rules of the Court of Federal Claims ("RCFC") to dispose of actions, where warranted, in a just, speedy, and

---

[1]  In their Joint Preliminary Status Report in this case, the parties agreed that discovery was not necessary in this litigation.  They proposed, and this court concurred, that discovery conducted in the district court litigation in Wyoming would remain "applicable in this case and shall be available for use by the parties for all purposes in this case." *Wyodak Resources Development Corp. v. United States*, Case No. 11-335 T, ECF No. 16  at 9 (Fed. Cl., Nov. 22, 2011).

inexpensive manner. *See Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). A motion for summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." RCFC 56 (c )(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, the court's proper role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it "might affect the outcome of the suit"; a dispute is genuine if the evidence is such that a reasonable trier of fact could find for the nonmoving party. *Id.* at 248.

The party moving for summary judgment may prevail by demonstrating the absence of any genuine issues of material fact or by showing the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of material fact. *Id.* at 324. Any inferences that may be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Similarly, "[i]n cases in which there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant." *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984). "The movant also must demonstrate its entitlement to judgment as a matter of law." *Id.*

Where, as here, the parties have cross-moved for summary judgment, the court reviews the motions under the same standards. *First Annapolis Bancorp., Inc. v. United States*, 75 Fed. Cl. 263, 275 (2007). "The fact that both parties have moved for summary judgment," however, "does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*

III.    Discussion

This case hinges on legal, rather than factual, determinations. The first issue is when the rank, or classification of, the coal must be ascertained for purposes of assessing the appropriate reclamation fee. The second issue is whether Wyodak followed the requisite statutory and regulatory methodology in its testing for the presence of lignite coal at the time of "production." The dispute over testing methodology only arises, however, if the court concludes first that the rank must be determined in situ prior to the coal's extraction from the mine via explosive blasting.

A.    Defendant's Jurisdictional Challenge

As a preliminary matter, Defendant argues this court lacks jurisdiction over a substantial portion of Plaintiff's complaint due to the expiration of the statute of limitations. Defendant maintains that Wyodak's claim for refund of its alleged overpayments for the years 1981 to 2005 is barred by 28 U.S.C. § 2501, which prescribes a limitations period of six years on the filing of

suit in this court after a cause of action has accrued.  In the absence of any other statutory provision to the contrary, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after the claim first accrues." *Id*.  Furthermore, "[i]t is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature." *Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc).  A party's claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Id*. at 1303, quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Fed. Cir. 1993).

The Government argues, therefore, that Plaintiff's claim for recovering reclamation fees paid prior to May 25, 2005, six years prior to the filing of the complaint in this court, is barred by operation of § 2501.  The court agrees.

Defendant rightfully notes that "the Government's ostensible liability for a refund of any overpayment would have occurred at the time of each alleged overpayment."  Def.'s Resp. and Cross-mot. 25.  Wyodak knowingly paid the reclamation fees at the non-lignite rate.  It later sought a refund based on an after-the-fact analysis by its own expert, but the coal in question was sold long ago and is patently no longer available for testing for Btu content.  In conjunction with the court's determination, *infra*, that it is the coal *as extracted* to which the reclamation fee applies, it is clear that the "events" that would fix the Government's alleged liability occurred on each of the occasions that Wyodak paid the surface rate for what it now claims was lignite coal.

Plaintiff's counter-argument focuses on the administrative procedures whereby an operator may file an amended tonnage calculation report "to make changes to the tonnage calculation" and seek a refund of alleged overpayments after the initial report has been submitted, citing the OSM Payer Handbook.  Pl.'s App. II 45-46 (Handbook at 28-29).  Because there is no time bar for submitting the amended report form, Wyodak reasons, it is only once OSM has denied a request for refund (via an audit report) or after an administrative review of an operator's challenge of the audit findings that a refund claim "matures" or fully accrues.  Thus, Wyodak avers that its claims as to its 2006 fees and its pre-2006 payments accrued only as of the OSM administrative reviews on August 3 and September 19, 2007, respectively.

Plaintiff furthers relies on the accrual suspension rule in arguing that its claim had not accrued until its own expert reported in February 2006 that the coal seam at issue contained a layer of lignite coal within it.  The accrual suspension rule provides that accrual of a claim may be considered suspended "until the claimant knew or should have known that the claim existed." *Martinez,* 333 F.3d at 1319.  To come within the ambit of the accrual suspension rule, a plaintiff "must either show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Id*. (citation omitted).

Such arguments are unavailing here.  As the Court of Federal Claims properly noted in *P.B. Dirtmovers, Inc. v. United States*, 30 Fed. Cl. 474 (1994), "If disputes are subject to mandatory administrative proceedings, then the claim does not accrue until their conclusion." *Id*.

at 477.  Wyodak's pursuit of refunds, however, constituted a "permissive administrative remed[y] [that] does not affect the accrual of [a] plaintiff's rights or toll the statute of limitations."  *Id.*  Thus, its claims began at the time of the alleged overpayments, not later when it submitted its amended reports, nor when OSM denied its refunds pursuant to audit or the audit review.  In addition, there is no basis for any allegation that the Government concealed its actions or that Wyodak's claim of a lignite layer within the Wyodak Mine seam was inherently unknowable.

Thus, the court finds the statute of limitations has run on any of Wyodak's claim for reclamation fee refunds with respect to payments made prior to May 25, 2005.

B.  When Liability for the Reclamation Fee Attaches

The focus of the dispute at the administrative level (and at the district court) was whether Wyodak had adequately documented the presence of lignite coal *at the time of sale*.  Audit Report I at 3, citing 30 C.F.R. § 870.12.  In its August 2007 letter to Wyodak sustaining the Audit Report's conclusion, OSM's Audit Appeals Officer emphasized that, under § 870.12(b), "*the fee shall be determined at the time of the initial bona fide sale, transfer of ownership, or use*.  After review of the audit and consulting with OSM engineering staff, I have determined Wyodak did not provide adequate records to support the claim that the coal *shipped* was lignite."  Compl., Ex. 4 ("Review Letter I") (second emphasis added).

As Defendant has acknowledged, however, the United States Court of Appeals for the Federal Circuit has held that, as applied to coal reclamation fees under SMCRA, " 'coal produced' is limited to 'coal extracted.'"  *Consolidation Coal Co. v. United States*, 528 F.3d 1344, 1348 (Fed. Cir. 2008) ("*Consol III*").  In addition, in a follow-up appeal in the same case, the Federal Circuit clarified that the definition of the phrase, "coal produced," under the statute was equally applicable to the same phrase in the regulations implementing the statute as promulgated by OSM.  *Consolidation Coal Co. v. United States*, 615 F.3d 1378, 1382 (Fed. Cir. 2010) ("*Consol V*").  The court noted its agreement with the Government's position that "liability under SMCRA incurs at the time of extraction; the collection of the fee is merely delayed until the time of sale, when operators typically weigh coal."  *Id.* at 1381.

The question arises, then, as to what is meant by "extraction."  Defendant explains that "[e]xtraction occurs by blasting coal out of a seam with explosive charges."  Def.'s Resp. and Cross-mot. 13.  As a practical effect at the Wyodak mine, as Defendant further acknowledges, "the natural result of the blasting and coal extraction process is a blending and mixing of the coal from the coal seam" of both lignite and subbituminous coal.  *Id.*  Defendant, however, argues that, because liability for the reclamation fee attaches at, but only at, the point of extraction – that is, the blasting – therefore it is immaterial what the rank of the coal was prior to the blasting.  "[T]he reclamation fee is aimed at, and triggered by, the act of extracting coal from the ground, *not* coal *to be* extracted, or coal sitting in the ground."  *Id.* at 12.  Thus, Defendant dismisses Wyodak's argument that "operators are required to test for and determine the rank of coal prior to that time in order to know what reclamation fees apply to such coal (i.e., the rate for lignite coal or the rate for higher ranks of coal)."  Pl.'s Mot. 24.

As Defendant explains,

> Put concretely, when the 12 percent of the coal seam that
> Wyodak's consultant purported to identify as lignite coal
> (assuming, for purposes of argument only[,] that that is correct) is
> extracted by blasting, it instantaneously mixes with the remaining
> 88 percent of the seam containing higher grade subbituminous C
> coal, *i.e.*, coal that does not meet the regulatory definition of
> lignite. It is this higher grade homogenized coal that is actually
> 'produced' by Wyodak within the meaning of SMCRA, and it is
> that *extracted* coal, rather than the separate components of the coal
> seam in the ground, that is properly subject to reclamation fees
> under SMCRA.

Def.'s Resp. and Cross-mot. 14 (internal citation deleted).

Defendant's position in this respect may, at first glance, seem too finely drawn. If the
"instance" of extraction is the blasting, then the homogenized coal to which Defendant refers is
the "product" of the blasting. Defendant asserts that the "mixing" is instantaneous with the
blasting, but whether there is an intervening "instance" between the explosion and the product of
the explosion is esoteric. There is, obviously, no means to assess the Btu value of the coal at the
very point of extraction, that is, concurrent with the blasting. Therefore, the rank of the coal is
pertinent either just prior to the extraction or subsequent to extraction.

As noted, in the two *Consolidation Coal* cases cited *supra*, the Federal Circuit has held
that "coal produced" means "coal extracted." Defendant has appropriately noted that neither of
those opinions recites any coal rank testing requirement prior to the extraction. While the Circuit
did not further define "extraction," in both phrases, however, the modifiers of the word "coal"
are constructed as past participles: "produced" and "extracted." The phrases thus instruct that
the coal has been acted upon in a past tense context. *Cf. Tuna Processors, Inc. v. Hawaii
International Seafood, Inc.*, 327 Fed. Appx. 204, 2009 WL 1084197 at 5 (Fed. Cir. Apr. 23,
2009) (use of the past participle places temporal limitation on a smoking method). Logic
suggests, then, that the reclamation fee attaches to the product of the blasting – the extracted
coal, not the coal to be extracted.

Wyodak makes no argument that any testing of the blended coal produced by the blasting
would demonstrate a Btu value consistent with the regulatory definition of lignite coal. Instead,
it merely observes that "once lignite coal is blended with subbituminous coal at the Wyodak
Mine, the lignite coal does not cease to exist." Pl.'s Reply and Resp. 19. *Sub silentio*, however,
it seems to acknowledge that the Btu value of the blended product exceeds the 8,300 unit
threshold for lignite: "Rather, as a lower BTU-value coal, the lignite coal lowers the overall
BTU-value of Wyodak's blended coal product. . . . Instead, Wyodak sells its blended coal
product based on the BTU-value of the blended coal." *Id.* It then relies on the policy argument
behind Congress's decision to set a lower reclamation fee on lignite coal. Wyodak's blended
product sells for less than non-blended coal because of the former's lower energy content;
Wyodak would face an economic burden at the higher reclamation fee rate, an outcome directly

contrary to Congress's intent. "Congress' intent for taxing lignite at a lesser rate than other types of coal was to account for lignite's lower energy content and to prevent an undue economic burden on producers of this lower rank of coal." *Id*. at 20.

Despite this concern, Plaintiff's conceded, as noted by the district court in Wyoming, that lignite coal as such can survive the mining process and meet the Btu definitional requirement, presumably where the seam itself is lignite and not merely one that comprises a lignite layer within the seam. Such lignite coal, it acknowledged, indeed is sold elsewhere in the United States. This concession undercuts its argument that policy considerations should inform and ameliorate what otherwise appears to be a clear delineation of when the coal is "extracted" for purposes of ascertaining the proper rate.

At heart, Wyodak argues that lignite coal exists at the Wyodak Mine, that Wyodak extracts lignite coal from the ground at the mine, and that SMCRA prescribes that the lignite coal is to be taxed at a lower rate that the other types of coal. Wyodak's claim founders, however, on the court's determination that Wyodak has failed to demonstrate that the coal in question, *as extracted*, is by statutory and regulatory definition lignite in its blended Btu content.

Because the court finds that the extracted coal was not documented as lignite, it is unnecessary to address the parties' arguments regarding the appropriate methodology for testing the coal in situ under the SMRCA regulations and their references to the testing standards of the American Society for Testing and Materials (ASTM).

IV.     Conclusion

For the reasons stated above, the court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion.

The Clerk of Court is directed to enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge